UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

RUBEN DELEON,

       Petitioner,

v.                         Case No: 5:12-cv-163-Oc-29PRL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS
and FLORIDA ATTORNEY
GENERAL,

       Respondents.

_____

<u>**OPINION AND ORDER**</u>

This matter comes before the Court on Ruben Deleon's ("Petitioner's") amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 6, filed June 4, 2012). Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought should not be granted (Doc. 5; Doc. 7). Respondents filed a response in compliance with this Court's instructions and with the <u>Rules Governing Section 2254 Cases in the United States District Courts</u> (Doc. 10). Petitioner did not file a reply.

Petitioner raises three claims for relief in his petition. He alleges that: (1) the evidence introduced at trial was insufficient to prove guilt; (2) trial counsel was ineffective for failing to call Michael Hatfield as a witness at trial; and (3) trial counsel was ineffective for failing to move for a judgment

of acquittal based upon the defense of objective entrapment (Doc. 6 at 4-6).

Because this Court can adequately assess Petitioner's claims without further factual development, an evidentiary hearing will not be conducted. Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003). Upon due consideration of the amended petition, the response, and the state-court record, this Court concludes that Claim One is due to be dismissed as unexhausted and procedurally barred. Claims Two and Three are due to be denied.

## I.   Background and Procedural History

On December 1, 2005, Petitioner was charged by amended information with attempted trafficking in a controlled substance and possession of a fictitious driver's license (App. A at 16).[1] After a jury trial, Petitioner was found guilty as charged (App. B at 189-91). He was sentenced to fifteen years in prison on count one and to a concurrent five year prison term on count two (App. A at 61-62). Petitioner's convictions and sentences were per curiam affirmed by Florida's Fifth District Court of Appeal (App. D); Deleon v. State, 951 So. 2d 853 (Fla. 5th DCA 2007).

On May 20, 2008, Petitioner filed a petition for habeas corpus relief in the state appellate court (App. E). Petitioner alleged

---

[1] Unless otherwise noted, citations to appendices (App. ___ at ___) are to those filed by Respondents on October 1, 2012 (Doc. 11). Citations to the trial, contained in Appendix B, will be cited as (T. at ___).

that appellate counsel had been ineffective for failing to raise properly preserved discovery claims (App. E).   The petition was denied on the merits (App. F).

On October 3, 2008, Petitioner filed a *pro se* motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion") in which he raised five grounds of ineffective assistance of trial counsel (App. I). After holding an evidentiary hearing, the post-conviction court entered a detailed order denying Petitioner's Rule 3.850 motion (App. K).   Florida's Fifth District Court of Appeal *per curiam* affirmed (App. M); Deleon v. State, 2012 WL 266949 (Fla. 5th DCA January 24, 2012).

Petitioner filed the instant amended request for habeas relief on March 28, 2012 (Doc. 6).

## II.  Governing Legal Principles

### a.  *Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")*

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in

> light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d).  A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference.  Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).

"Clearly established federal law" consists of the governing legal principles, rather than the dicta, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).  A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000) or, "if the state court either unreasonably extends a legal principle from [Supreme Court]

precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 529 U.S. at 406). The unreasonable application inquiry "requires the state court decision to be more than incorrect or erroneous," rather, it must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-77 (2003) (citation omitted); Mitchell, 540 U.S. at 17-18; Ward, 592 F.3d at 1155.

Finally, the Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) (dictum). When reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see e.g. Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").

### b. *Standard for Ineffective Assistance of Counsel*

In Strickland v. Washington, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984). A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. Id. Because both parts of the Strickland test must be satisfied in order to demonstrate a violation of the Sixth Amendment, a district court need not address the performance prong if the petitioner cannot meet the prejudice prong, or vice versa. Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000).

The focus of inquiry under Strickland's performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688-89.  In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689.  Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006).  A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of

judicial scrutiny. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).

As to the prejudice prong of the Strickland standard, Petitioner's burden to demonstrate prejudice is high. Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002).  Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.  That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. At 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

### c.   *Exhaustion and Procedural Default*

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law. Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> > (A)  the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)
> >
> > > (i)  there is an absence of available State corrective process; or

> (ii) circumstances exist
> that render such process
> ineffective to protect the
> rights of the applicant.

28 U.S.C. § 2254(b)(1) (2012).

Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" Duncan v. Henry, 513 U.S. 364, 365 (1995) (citing Picard v. Conner, 404 U.S. 270, 275-76 (1971)). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. Snowden v. Singletary, 135 F.3d 732 (11th Cir. 1998). In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court. Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims). Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural

grounds under state law. Coleman, 501 U.S. at 750.  If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

Procedural default will be excused only in two narrow circumstances.  First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default.  "To establish cause for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999).  To establish prejudice, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003).

The second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" Murray v. Carrier, 477 U.S. 478, 479-80 (1986).  Actual innocence means factual innocence, not legal insufficiency. Bousley v. United States, 523 U.S. 614, 623 (1998).  To meet this standard, a petitioner must "show that it

is more likely than not that no reasonable juror would have convicted him" of the underlying offense.  Schlup v. Delo, 513 U.S. 298, 327 (1995).  In addition, "[t]o be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial."  Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324).

III. **Analysis**

  *a. Claim One*

  Petitioner asserts that his Fourteenth Amendment due process rights were violated because the circumstantial evidence presented by the State was insufficient to prove that he attempted to traffic in methamphetamine (Doc. 6 at 4).  Specifically, Petitioner argues that he never met with the seller of the drugs and never agreed to a specific price for their purchase. Id.

  Respondents assert that this claim is unexhausted because, although Petitioner raised it on direct appeal, he did so in terms of state law only (Doc. 10 at 12).  Indeed, a review of Petitioner's brief on direct appeal indicates that he argued the merits only as a claim of insufficient evidence under Florida law (App. C).  Specifically, Petitioner claimed that Florida law requires an overt act to prove an attempted sale and that he never agreed to buy a specific quantity of methamphetamine for a specific price and that the terms and conditions of the proposed sale had

not been finalized. Id. at 7.  Accordingly, Petitioner argued, his conduct did not amount to an overt act under Florida law. Id.[2]

Before a federal court may grant habeas relief, the petitioner must exhaust every available state court remedy for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b); Henderson, 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.").  The prohibition against raising an unexhausted claim in federal court extends to both the legal theory of relief and to the specific factual contention that supports relief. Kelley v. Sec'y for Dep't of Corr., 377 F.3d 1317, 1344 (11th Cir. 2004). Petitioner's state law arguments presented on direct appeal leave the exhaustion requirement unsatisfied. Duncan, 513 U.S. at 365; see also Pearson v. Sec'y, Dept. of Corr., 273 F. App'x 847 (11th Cir. 2008) (claim unexhausted when petitioner cited exclusively to state cases, all of his substantive arguments addressed state law, and nothing in the argument alerted the state court to a federal due process claim).

---

[2] To the extent Petitioner now argues that the state courts' rejection of Claim One was based upon a misapplication of Florida law, the claim is not cognizable on habeas review. See Lewis v. Jeffers, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law.").

Petitioner has not alleged that some external factor impeded his efforts to properly raise this claim on direct appeal. Wright, 169 F.3d at 703. Nor has Petitioner presented new, reliable evidence not presented at trial to support an actual innocence claim. Schlup v. Delo, 513 U.S. at 324. Moreover, Florida's procedural rules and time limitations preclude a second direct appeal. Fla. R. App. P. 9.140(b)(3) (defendant wishing to appeal a final judgment must do so within "30 days following rendition of a written order"). Consequently, in addition to being unexhausted, Claim One is procedurally barred. Accordingly, Claim One cannot be considered by this Court.

Even assuming *arguendo* that Petitioner's appellate brief exhausted this claim, it fails on the merits. The Due Process Clause of the Fourteenth Amendment requires the state to prove each element of the offense charged beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 315 (1979). Under Jackson, federal courts must look to state law for the substantive elements of the offense, but to federal law for the determination of whether the evidence was sufficient under the Due Process Clause. Coleman v. Johnson, 132 S. Ct. 2060, 2064 (2012). For federal due process review, "the relevant question is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319.

Petitioner was convicted of attempted trafficking in methamphetamine (Doc. 6 at 1). A person commits the first degree felony of trafficking when that person "knowingly sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 200 grams or more of methaqualone or of any mixture containing methaqualone[.]" Fla. Stat. § 893.135(1)(e)(1) (2005). Under Florida law, an attempt consists of two elements: (1) a specific intent to commit a particular crime; and (2) an overt, but ineffectual, act done towards the crime's commission. See Gustine v. State, 86 Fla. 24 (Fla. 1923). The overt act must reach "far enough toward accomplishing the attempted crime as to amount to commencement of consummation of the crime," beyond mere preparation and planning. State v. Duke, 709 So. 2d 580, 582 (Fla. 5th DCA 1998); Fla. Stat. § 777.04(1) (2005) ("[a] person who attempts to commit an offense prohibited by law and in such attempt does any act toward the commission of such offense, but . . . [is] prevented in the execution thereof, commits the offense of criminal attempt.").

Evidence was presented at Petitioner's trial that he made arrangements with his former drug dealer, Manuel Villafuerte-Barrientos, to meet at a Winn-Dixie parking lot in Okahumpka, Florida to purchase 2.5 to 3 pounds of methamphetamine for twenty thousand dollars, subject only to Petitioner's approval of drug

quality (T. at 39-42, 64-67, 69, 81-84, 90). Petitioner was arrested by the police when he stopped and parked at the agreed meeting place after ensuring that Villafuerte-Barrientos was actually there (T. at 67-68, 74, 93-95, 111-12). Testimony was presented that Petitioner was not working for the DEA on the day of his arrest and that he had been warned that he could not work independently as an informant (T. at 132-33, 136-37).

Viewing this evidence in the light most favorable to the State, this Court cannot conclude that no rational jury could have found the essential elements of criminal attempt beyond a reasonable doubt. Accordingly, the state court's rejection of this claim, was neither contrary to Jackson, nor based upon an unreasonable determination of the facts in light of the evidence in the state court proceedings. 28 U.S.C. § 2254(d)(1). Accordingly, in addition to being unexhausted and procedurally barred, Claim One is denied on the merits.

### b. Claim Two

Petitioner asserts that trial counsel was ineffective for failing to call his former attorney, Michael Hatfield ("Hatfield"), as a witness at trial (Doc. 6 at 4). Specifically, Petitioner argues that Hatfield could have provided evidence that Petitioner had not gone to meet Villafuerte-Barrientos to purchase drugs, but rather, in order to "set him up" for the Drug

Enforcement Administration ("DEA") "in furtherance of his agreement with Agent Weiss." (Doc. 6 at 4; App. I at 12).

In his Rule 3.850 motion, Petitioner argued that Hatfield's testimony would have supported his theory of defense that he (Petitioner) did not go to the Winn-Dixie parking lot to buy drugs as was alleged by the State, but rather, to set up a drug transaction on the DEA's behalf (App. I at 11). He asserted that Hatfield would have testified that Petitioner was told by the DEA not to contact them until he was sure the target was in possession of drugs and that such evidence would have "brought Weis' credibility into question, or at least created a reasonable doubt as to whether Defendant was attempting to traffic in methamphetamine." Id. at 11-12.

The post-conviction court held an evidentiary hearing on this claim at which both counsel and Hatfield testified (App. I at 12; App. J). After the hearing, the post-conviction court denied the claim on the ground that counsel's decision not to call Hatfield as a witness had been a reasonable strategic choice:

> The defendant claims his counsel was ineffective for failing [to] call Michael Hatfield, Esq. as a defense witness at trial. [Counsel] testified at the hearing that it was a strategic decision on his part not to call Mr. Hatfield as a defense witness, after conducting his investigation and speaking with Mr. Hatfield. The defendant requested that [counsel] call Mr. Hatfield as a witness and that Mr. Hatfield would testify that he was working for the DEA on August 19, 2005.

- 15 -

> [Counsel] related details of the conversation
> he had with Mr. Hatfield on March 15, 2006,
> during which he had taken extensive notes.
> According to [counsel], Mr. Hatfield did a
> substantial amount of work on the case before
> realizing that the defendant was still selling
> drugs.   Not wanting to be paid with "drug
> money, Mr. Hatfield withdrew from the case.
> Mr.  Hatfield's  impression  was  that  the
> defendant wanted to "run things his way and
> that's not how the Feds work" and therefore
> the defendant "simply never came through for
> the DEA" even though, according to [counsel],
> Mr. Hatfield, who was in contact with the DEA
> told him the agents "bent over backwards for
> defendant."
>
> Mr. Hatfield also testified at the hearing and
> nothing Mr. Hatfield testified to was contrary
> to the recollections of conversations between
> them as testified to by [counsel], and indeed
> Mr. Hatfield had copies of [counsel's] notes
> and did agree that they were "short versions"
> of what he had said, and clarified that he
> personally had no evidence the defendant was
> still selling drugs, but that Agent Weiss
> believed that the defendant was still selling
> drugs, which caused Mr. Hatfield to pull his
> firm out of representing the defendant, so as
> not to be associated with him and possibly
> take "drug money" for fees, subjecting the
> firm to possible scrutiny or perhaps search by
> the DEA.

(App. K at 187-88) (internal citations to the record omitted).

Petitioner does not explain how the state court's rejection of
this claim was contrary to Strickland or based upon an unreasonable
determination of the facts.   A review of applicable law and the
state court record support's the post-conviction court's
conclusions.

The Supreme Court of the United States has held that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690–91. "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [this Court] will seldom, if ever, second guess." Conklin v. Schofield, 366 F.3d 1191, 1204 (11th Cir. 2004) (citation omitted). To show that counsel's conduct was unreasonable, Petitioner would need to demonstrate that no competent counsel would have chosen to forego calling Hatfield as a witness. Miranda v. United States, 433 F. App'x 866, 869 (11th Cir. 2011).

Counsel testified at the evidentiary hearing that after speaking with Hatfield, he made a strategic decision not to call him as a witness at trial (App. J at 108-09). Counsel believed that Hatfield would not have been a good witness for the defense because, although he could have corroborated Petitioner's statement that Petitioner had communicated with the DEA, Hatfield also indicated that Petitioner had not cooperated with the DEA agents and "[i]t's not going to jive with our theory because he's telling me that [Petitioner] didn't follow the plan. So I'm going to open up this can of worms." Id. at 97.

That Petitioner had communicated with the DEA in order to become a confidential informant was not in dispute at Petitioner's

trial. Carl Weis, a special agent with the DEA testified at trial that he had attempted to get Petitioner to cooperate with and provide information about his "criminal organization" to the DEA (T. at 129-30).   He testified that Petitioner was not, however, working for the DEA on the day of his arrest (T. at 132-33).   He also testified that he believed Petitioner was misleading the DEA and "doing drug transactions behind [the DEA's] back." (T. at 133, 140).

Hatfield testified at the Rule 3.850 evidentiary hearing, but did not recall any specific incidence of Petitioner being told by the DEA not to contact them unless he was certain the target had drugs (App. J at 138).   Hatfield noted:

> [Petitioner's] problem, as he articulated – I have no evidence of this – is that he would have these – the opportunity to make good his promise to cooperate under this – what I hope is a written agreement, but that the agents were not available and he could not reach them to do the deal because the deal was right there and it had to be now.
>
> And the flip side of that was the agents, as I had informed him all along, have very strict guidelines relating to the collection of evidence, the documentation of phone calls, the taping of phone calls to the extent possible because they have to make an ironclad case, and the agents could not possibly respond to targets of opportunity of [Petitioner] if you understand me.

(App. J at 111-12). Petitioner does not explain how Hatfield's testimony, which largely tracked that of Weiss, would have helped

his theory of defense.  To the contrary, Hatfield's understanding was that Weis believed Petitioner was still selling drugs and that Petitioner did not wish to follow the DEA's strict rules for a confidential informant. Id. at 111-12, 145, 147.

Given the evidence presented at the Rule 3.850 hearing, this Court cannot conclude that no competent counsel would have chosen not to call Hatfield as a witness at Petitioner's trial. Likewise, because Hatfield's testimony was largely the same as Weis', Petitioner cannot show that he suffered prejudice from the omission of Hatfield as a witness. This claim fails on both prongs of Strickland and is denied pursuant to 28 U.S.C. § 2254(d).

### c. Claim Three

Petitioner asserts that counsel was ineffective for failing to raise the affirmative defense of "objective entrapment." (Doc. 6 at 6).  Specifically, Petitioner states that he believed he was operating as a confidential informant when he arranged to purchase drugs from Villafuerte-Barrientos and that Agent Weis had instructed Petitioner not to contact him "until he was sure that [Villafuerte-Barrientos] had the drugs on him." (Doc. 6 at 6; App. I at 20).  Petitioner raised this claim in his Rule 3.850 motion, and the post-conviction court denied the claim on both prongs of Strickland (App. K at 190).

At the evidentiary hearing on Petitioner's Rule 3.850 motion, counsel testified that he did not consider raising an entrapment

defense for Petitioner because he did not believe such a defense to be viable (App. J at 129, 132).  Counsel stated that his defense at trial was that Petitioner was actually working for the DEA, which was inconsistent with an entrapment defense. Id.

Petitioner now argues that he was a victim of objective entrapment "in violation of the Sixth and Fourteenth Amendments to the United States Constitution." (Doc. 6 at 6).  Under Florida law, an objective analysis of entrapment on due process grounds focuses on the conduct of law enforcement. State v. Blanco, 896 So. 2d 900, 901 (Fla. 4th DCA 2005).  The type of conduct held to violate due process is that which so offends decency or a sense of justice that judicial power may not be exercised to obtain a conviction. See, e.g., Madera v. State, 943 So. 2d 960 (Fla. 4th DCA 2006) (confidential informant made promises of an intimate relationship, including sexual relations, if the defendant would assist her in obtaining drugs); State v. Glosson, 462 So.2d 1082 (Fla. 1985) (law enforcement entering into a contingency contract with informants to obtain convictions); Cruz v. State, 465 So.2d 516 (Fla. 1985)(law enforcement officer appearing inebriated and hanging money from his pocket in high crime area); State v. Williams, 623 So.2d 462 (Fla. 1993) (illegal manufacture of crack cocaine by law enforcement officials for use in reverse-sting operation).

Petitioner asserted in his Rule 3.850 motion that he had a general understanding with Agent Weis to "assist the DEA in setting up buys and drug transactions." (App. I at 19).  Petitioner states that he had no actual intention of conducting a drug transaction on the day of his arrest and that all he was doing was following the instructions of his handlers. Id. at 20. Petitioner does not argue that he had a specific understanding with Weis regarding the very transaction that resulted in his arrest, but states that Weis knew that Petitioner would not contact him until he was sure that Villafuerte-Barrientos was actually in possession of drugs. Id.

In this case, Petitioner's allegations differ from the testimony of the police at his trial.  Agent Weis testified that the sting which resulted in Petitioner's arrest was not a DEA sting (T. at 143).[3]  Weis testified that, although the DEA had reached out to Petitioner on prior occasions in an attempt to get him to cooperate with the DEA, Petitioner was not working with the DEA at the time he attempted to purchase methamphetamine from Villafuerte-Barrientos on August 19, 2005 (T. at 132, 133, 138). In fact, Weis testified that he had spoken with Petitioner two days prior to his arrest, and Petitioner had told him that he had nothing in the works and no plans to put together a drug transaction (T. at 134-35).  Weis testified that he had explained

---

[3] Petitioner was arrested by Lake County detectives, not federal agents (App. A at 16).

the rules to Petitioner and instructed him that he could not violate the law or take independent action (T. at 136, 137). Weis believed that Petitioner was still illegally dealing drugs (T. at 133). Weis stated that he was available by telephone on the day of Petitioner's arrest and that he was aware of the Lake County Sheriff Office's operation, and had Petitioner contacted him, he would have told them that Petitioner was trying to cooperate (T. at 137, 139)

Although Petitioner insists that he subjectively believed he was cooperating with the DEA, his focus on his own state of mind is irrelevant for a defense of objective entrapment; the only question is whether the conduct of law enforcement was so egregious as to violate the due process rights of the defendant. See Madera v. State, 943 So. 2d 960 (Fla. 4th DCA 2006) (discussing the distinction between subjective and objective entrapment). Upon reviewing the testimony of counsel and Agent Weis, the Court concludes that nothing in the record demonstrates conduct on the part of any law enforcement officer amounting to prohibited police conduct under the due process clause. Accordingly, counsel's conclusion that an affirmative defense of objective entrapment was not viable fell "within the wide range of reasonable professional assistance" afforded counsel on habeas review. Strickland, 466 U.S. at 689. Claim Three is denied pursuant to 28 U.S.C. § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

### IV.   Certificate of Appealability

Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability ("COA").  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further," Miller-El, 537 U.S. at 335–36 (internal citations and quotation marks omitted). Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.  Claim One of the amended petition for writ of habeas corpus filed by Ruben Deleon is **DISMISSED** as unexhausted and procedurally barred.  Claims Two and Three are **DENIED.**

2.    Petitioner is **DENIED** a Certificate of Appealability and therefore is not entitled to appeal *in forma pauperis*.

3.    The Clerk of the Court is directed to terminate all pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this ___25th___ day of April, 2014.

_____
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Ruben Deleon
Counsel of Record